NOT DESIGNATED FOR PUBLICATION

No. 127,000

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee/Cross-appellant*,

v.

PAUL ANDREW VASQUEZ,
*Appellant/Cross-appellee*.

MEMORANDUM OPINION

Appeal from Rice District Court; STEVEN JOHNSON, judge. Submitted without oral argument. Opinion filed February 28, 2025. Convictions affirmed, and cross-appeal dismissed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant/cross-appellee.

*Remington S. Dalke*, county attorney, and *Kris W. Kobach*, attorney general, for appellee/cross-appellant.

Before COBLE, P.J., SCHROEDER and ISHERWOOD, JJ.

PER CURIAM: A jury convicted Paul Andrew Vasquez of simple possession of methamphetamine, obstructing apprehension or prosecution, and possession of drug paraphernalia. The district court granted Vasquez a downward dispositional departure sentence and imposed probation for 24 months with a suspended sentence of 42 months in prison and 6 months in jail. Vasquez appeals his convictions for possession of methamphetamine and drug paraphernalia, claiming the State committed reversible error during its closing arguments. The State filed a cross-appeal, arguing the district court erred by granting Vasquez' departure request; however, since his appeal, Vasquez

1

violated the terms of his probation, the district court revoked his probation, and he was sentenced to his prison term. As a result, finding no reversible error by the prosecution we affirm Vasquez' convictions and dismiss the State's cross-appeal as moot.

FACTUAL AND PROCEDURAL BACKGROUND

In September 2021, law enforcement officers spotted a person of interest, Christopher Geissert, entering Vasquez' residence and obtained a search warrant to enter the home to arrest Geissert. Vasquez initially told the officers Geissert was not in the house, would not allow them to enter, and asked to review the search warrant. After the officers provided Vasquez a copy of the warrant, he remained hesitant to let the officers in. After five or six minutes of argument, he allowed the officers inside the house but still denied Geissert was there.

Upon entry into the residence, the officers found Geissert on the second floor and arrested him. Deputy Max Bryant then instructed Deputy Monty Payne to arrest Vasquez for harboring Geissert, and Deputy Payne ordered Vasquez, "Stand up."

Once Vasquez was placed under arrest, the officers noticed a small baggie containing a crystal substance on the seat where Vasquez had just been sitting. Based on the officers' training and experience, they believed the baggie contained methamphetamine. After discovering the baggie, the officers applied for a second warrant to search the entire residence for methamphetamine. Officers executed the second search warrant and, along with other drugs near where Geissert was found hiding, they found an eyeglass case on a coffee table beside the chair that Vasquez was seated in; that is, the eyeglass case was within Vasquez' reach when he was arrested. The eyeglass case contained a glass smoking pipe with methamphetamine residue and a bag containing a crystal-like substance, which was later determined to be methamphetamine.

2

The State charged Vasquez with possession with intent to distribute methamphetamine of an amount more than 3.5 grams but less than 100 grams (Count 1), possession of methamphetamine (Count 2), obstructing apprehension or prosecution (Count 3), interference with law enforcement (Count 4), and possession of drug paraphernalia (Count 5).

During trial, both Vasquez and his friend, John Edwards, testified that weeks prior to Vasquez' arrest, they had gone through Vasquez' house, purging it of anything drug related to help Vasquez get sober and change his lifestyle so he could try to regain custody of his daughter. Vasquez said the baggie found in the chair was not his and claimed he saw one of the officers, who had been involved in a romantic relationship with Vasquez' ex-wife, plant the drugs on his chair.

At the close of trial, the district court merged Count 1 and Count 2 and provided a combined jury instruction for those counts, including simple possession of methamphetamine as a lesser included offense of the possession with intent to distribute charges.

The jury convicted Vasquez of simple possession of methamphetamine, obstructing apprehension or prosecution, and possession of drug paraphernalia, and acquitted him of the interference with law enforcement charge.

Before sentencing, Vasquez filed a motion for dispositional departure and a non-prison sanction. The district court granted Vasquez' motion for dispositional departure and sentenced him to 42 months in prison and 6 months in jail but suspended that sentence and awarded him 24 months of probation.

Vasquez timely appeals his convictions. The State timely filed a cross-appeal regarding the departure sentence.

DID THE PROSECUTOR COMMIT REVERSIBLE ERROR?

Vasquez claims the State committed two prosecutorial errors during closing arguments. First, he argues the prosecutor shifted the burden of proof by improperly commenting that Vasquez failed to explain the presence of the methamphetamine found in the eyeglass case. He then challenges the prosecutor's remark that defendants manufacture excuses to deny possession of methamphetamine in other cases, claiming the statement was outside of the evidence. Vasquez asserts these two statements by the prosecutor amounted to errors, which prejudiced him by denying him a fair trial.

*Applicable legal standards*

We use a two-step process to evaluate claims of prosecutorial error: error and prejudice. *State v. Sieg*, 315 Kan. 526, 535, 509 P.3d 535 (2022). To determine whether an error occurred, "'the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial.'" 315 Kan. at 535.

If there is error, we next determine whether that error "'prejudiced the defendant's due process rights to a fair trial.'" 315 Kan. at 535. Kansas has adopted "'the traditional constitutional harmlessness inquiry demanded by *Chapman* [386 U.S. 18].'" *Sieg*, 315 Kan. at 535. Prosecutorial error is harmless if the State can demonstrate "'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.'" 315 Kan. at 535.

Vasquez concedes this issue was not raised in the district court and is being raised for the first time on appeal. Yet appellate courts will review a prosecutorial error claim

based on a prosecutor's comments made during voir dire, opening statement, or closing argument even without a timely objection, but the court may figure the presence or absence of an objection into its analysis of the alleged error. *State v. Bodine*, 313 Kan. 378, 406, 486 P.3d 551 (2021).

*The prosecutor did not shift the burden.*

Vasquez first claims the State improperly shifted the burden of proof to him during its closing argument. He argues although he had no obligation to provide any explanation about the drugs found in the eyeglass case, the prosecutor's comments improperly inferred to the jury that he was responsible to prove why the drugs were there. He claims these improper comments contributed to the jury's guilty verdict and, consequently, he was denied a fair trial.

The State contends the prosecutor was simply pointing out the weaknesses in the defense's theories. Likewise, the State argues the prosecutor's comment did not affect the jury because the jury instructions clearly established the State's burden of proof and the jury properly made its findings based on the evidence.

A prosecutor may not attempt to shift the burden of proof to the criminal defendant or misstate the legal standard about the applicable burden of proof. *State v. Williams*, 299 Kan. 911, 939, 329 P.3d 400 (2014). It is also well established that a prosecutor cannot suggest that a defendant must disprove the State's case. 299 Kan. at 939.

But prosecutors are generally afforded wide latitude in crafting closing arguments to address weaknesses in the defense. *State v. Watson*, 313 Kan. 170, 176, 484 P.3d 877 (2021). Any language used would fall outside the wide latitude allowed the prosecutor if the jury would naturally and necessarily take it to be a comment on the failure of the

accused to testify or to shift the burden of proof. But the prosecutor may point out a lack of evidence to support a defense or to corroborate a defendant's argument regarding holes in the State's case. *State v. Martinez*, 311 Kan. 919, 923, 468 P.3d 319 (2020); see also *Williams*, 299 Kan. at 940 ("[A] prosecutor does not shift the burden of proof by pointing out a lack of evidence to support a defense . . . ."); *State v. Stone*, 291 Kan. 13, 17-19, 237 P.3d 1229 (2010) (Prosecutor did not attempt to shift burden of proof by arguing the defendant had significant "'obstacles to overcome.'"). In fact, our Supreme Court has explained a prosecutor may fairly comment on the believability of and the evidence underlying the defense theory. *State v. Butler*, 307 Kan. 831, 868, 416 P.3d 116 (2018).

During closing arguments, the prosecutor discussed that although Vasquez presented a defense to the baggie found in his chair—even if unbelievable—he did not even attempt to explain the methamphetamine found in the eyeglass case. For context, the entire section of the closing argument is reproduced here, with the specific segments Vasquez challenges italicized:

> "Even—even if you wanted to believe that there was a law enforcement officer here in Rice County that would plant evidence, *the defendant never once gave you any explanation for where the meth in the eyeglass came from, the 3 grams there*.
> "He took the stand. *He testified and did not explain the eyeglass case that was right next to his chair, right next to his seat*. Detective Bryant took the stand. He said it was within arm's reach. You could see from the video that seat is where you could sit. You could watch TV. You could reach behind you. You could grab your meth, and you could smoke it and have your evening. *But the defendant provided no explanation of whose meth that was, where it came from. He didn't tell you. He did not give you an explanation.*
> . . . .
> ". . . The testimony, again, is that the eyeglass case—I mean, that's—that is in the eyeglass case that is next to his seat, within arm's reach where he sits to watch TV. *This is his eyeglass case that he gave you no explanation for*." (Emphases added.)

Appellate courts do not consider a prosecutor's statements in isolation. "Often the line between permissible and impermissible argument is context dependent." *Martinez*, 311 Kan. at 923 (citing *State v. Blansett*, 309 Kan. 401, 412-13, 435 P.3d 1136 [2019]). Considering the prosecutor's closing argument in its entirety, we find Vasquez' interpretation of the prosecutor's comments unpersuasive.

Vasquez relies on our Supreme Court's ruling in *State v. Anderson,* 318 Kan. 425, 439, 543 P.3d 1120 (2024), where the court found it was improper burden shifting for the prosecutor to comment about the defendant's failure to subpoena witnesses and submit evidence when the defendant has the same power to do so as the State. But in *Anderson*, our Supreme Court found the prosecutor's comments were erroneous because the prosecutor implied that the burden was on the defendant to rebut the State's witnesses and establish a reasonable doubt as to his guilt, especially by using "'would prove . . . there's a reasonable doubt'" language when discussing defendant's own burden to produce evidence. 318 Kan. at 438. Yet here, the prosecutor did not suggest that the defendant had the burden to disprove the evidence by subpoenaing witnesses or presenting evidence. And even in *Anderson*, despite the erroneous statement, the court ultimately found the error harmless. 318 Kan. at 439-40.

Vasquez exaggerates the prosecutor's comments by suggesting they required him to provide an explanation for the drugs in the eyeglass case and disprove the evidence. Rather than suggesting Vasquez should have testified about where the items in the eyeglass case came from, here, the prosecutor was attacking Vasquez' defense that he had rid his entire house of all drugs and drug paraphernalia and that the drugs found in his chair must have been planted by law enforcement. Conspicuously absent from these bigger-picture defense theories was any mention of the drugs and drug paraphernalia located inside the eyeglass case. The comments did not call Vasquez' silence into question, they only highlighted the lack of evidence supporting the defense's theories and the fact that Vasquez chose not to address the eyeglass case at all during his testimony.

7

"Prosecutors may point out inconsistencies in a defendant's statements and argue the evidence reflecting poorly on the defendant's credibility. But in doing so, they may not accuse a defendant of lying." *State v. Liles*, 313 Kan. 772, 776, 490 P.3d 1206 (2021). The prosecutor here did just that—he did not accuse Vasquez of lying, but did point out the inconsistencies in his positions.

When viewing the prosecutor's comments in their entirety, we find the prosecutor did not improperly shift the burden of proof. Thus, the prosecutor did not commit error, and we need not address whether these actions prejudiced Vasquez. See *State v. Peters*, 319 Kan. 492, 515, 555 P.3d 1134 (2024) ("Because there was no prosecutorial error, we need not reach the prejudice prong of the prosecutorial error analysis.") (citing *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 [2016]).

*The prosecutor did not introduce matters outside the evidence.*

Next, Vasquez argues that the prosecutor erred during closing arguments by referring to matters outside the evidence to attack Vasquez' credibility. When explaining to the jury the charge of possession of drug paraphernalia, the prosecutor discussed Vasquez' testimony during which he disclosed he had used meth for 37 years. The prosecutor asked the jury to consider that testimony along with the accompanying facts that Geissert—a felon—was found inside Vasquez' home, as well as the drugs in the eyeglass case being within an area of Vasquez' control, and methamphetamine was found "in the seat where he was sitting." Then the prosecutor went on to say:

> "A lot of times you'll hear that defendants are found with methamphetamines in their pocket. And sometimes they say, well, these aren't my jeans. We hear that all the time. [So,] I wouldn't have been surprised if the defendant would have said this isn't my chair. [But] He was sitting on top of it. This is his methamphetamine."

Vasquez claims that the comment is not supported by evidence because the State never established during trial that "defendants deny possession of their pants when faced with a charge" of possessing methamphetamine. He also argues the comment improperly asked the jury to assume a hypothetical case where the methamphetamine would be found in pants, whereas here the drugs were found in an eyeglass case.

Vasquez correctly states that the prosecutor may draw reasonable inferences from facts outside of the evidence, but a prosecutor may not argue facts that are not in the evidence. *State v. Ly*, 277 Kan. 386, Syl. ¶ 4, 85 P.3d 1200 (2004). As stated above, prosecutors are generally afforded wide latitude in crafting closing arguments. *Watson*, 313 Kan. at 176. But prosecutors are prohibited from stating their personal opinions regarding the ultimate guilt or innocence of the defendant or undermining the credibility of the defendant or witnesses. *State v. Akins*, 298 Kan. 592, Syl. ¶ 6, 315 P.3d 868 (2014); *State v. Peppers*, 294 Kan. 377, 396, 276 P.3d 148 (2012).

The State argues that the prosecutor's comments are matters of common knowledge or experience, and so they were proper. See *State v. Henderson*, 32 Kan. App. 2d 1202, 1210, 96 P.3d 680 (2004). We are not so convinced, on that score. But we also do not agree with Vasquez that the prosecutor was introducing new facts, nor did he ask the jury to consider matters outside of the evidence. The comment at issue was merely an illustration that it is common for a person to fabricate excuses when faced with criminal charges. And again, when taken in context with the remainder of the prosecutor's argument, it is apparent that the prosecutor was not actually directing the jury to imagine a literal hypothetical case involving pants. Rather, as explained, the prosecutor was presenting an analogy to the jury—albeit an analogy that toed a very close line to the facts of the case—to demonstrate a defendant's tendency to deny wrongdoing. As the State suggests, this is like the well-known expression of a child denying she pilfered the cookie jar, despite the appearance of cookie crumbs on her face. The prosecutor's comments fell within the realm of fair comment and did not improperly infer the

9

existence of facts outside the evidence directly affecting the case that the jury should consider but which were not presented as evidence during trial. See *State v. Hilt*, 299 Kan. 176, 198, 322 P.3d 367 (2014) ("[A] prosecutor may use 'analogies, similes, allusions [be they historic, poetic, literary, or scientific], and other rhetorical devices' in an attempt 'to bring order to the facts presented at trial, place them in a meaningful context, and out of this collection of bits and pieces construct the whole of a case.'") (quoting *Henderson*, 32 Kan. App. 2d at 1210).

For the above reasons, the prosecutor's comment did not amount to error, and we need not reach the prejudice prong of the prosecutorial error examination. See *Peters*, 319 Kan. at 515 (citing *Sherman*, 305 Kan. at 109).

MUST WE DECIDE WHETHER THE DISTRICT COURT ERRED IN SENTENCING VASQUEZ?

In its cross-appeal, the State contends the district court erred by granting Vasquez' motion for a departure sentence because there were no substantial and compelling reasons to support its decision. However, after the cross-appeal was fully briefed, Vasquez filed a "Notice of Change of Custodial Status" and a "Motion to Dismiss State's Cross-Appeal as Moot."

In these filings, Vasquez claimed the district court revoked his probation in November 2024 and ordered him to serve his prison sentence. Because Vasquez is now serving his prison sentence, he contends the State's cross-appeal regarding the dispositional departure is now moot, citing *State v. Mitchell*, No. 84,408, 2001 WL 37131916, at *1 (Kan. App. 2001) (unpublished opinion). Because the response time expired and the State failed to respond, we issued a show cause order requiring both parties to address the issue of whether the State's cross-appeal had become moot. The State responded by agreeing its appeal has become moot.

Appellate courts generally do not decide moot questions or render advisory opinions. *State v. Roat*, 311 Kan. 581, 590, 466 P.3d 439 (2020). This mootness doctrine is one of court policy, under which the court is to decide real controversies about the legal rights of persons and properties that are involved in the case properly before it and to adjudicate those rights in a way that is operative, final, and conclusive. 311 Kan. at 590.

We agree with the parties. The district court granted Vasquez a dispositional departure to probation, which is the action the State initially opposed. However, Vasquez' probation has already been revoked and he is now serving his prison sentence. Even if we were to reverse the district court's decision to grant the departure sentence, as the State requested, there would be no remedy for the State's cross-appeal, given Vasquez' present incarceration. On these facts, we find the cross-appeal is now moot, and the State's cross-appeal is dismissed.

Convictions affirmed, and cross-appeal is dismissed.